# United States Court of Appeals
## For the First Circuit

No. 21-1396

UNITED STATES,

Appellee,

v.

ALEJANDRO CARRASCO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Montecalvo, Circuit Judges.

Rachel Brill for appellant.
Nicole R. Lockhart, Trial Attorney, with whom Kenneth A. Polite, Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Corey R. Amundson, Chief, Public Integrity Section, and James I. Pearce, Attorney, Appellate Section, were on brief, for appellee.

August 28, 2023

**BARRON, Chief Judge**.  Alejandro Carrasco Castillo ("Carrasco") appeals his convictions and sentence for violating 18 U.S.C. § 666.  The underlying charges stem from his role in the allegedly corrupt awarding of contracts by various Puerto Rico municipalities.  We affirm.

**I.**

More than a decade ago, federal authorities began investigating allegations that three Puerto Rico municipalities had corruptly awarded contracts to a company owned by Juan Carlos Mercado, who at the time was a contractor and environmental engineer.  Federal authorities arrested Mercado in February 2012 in connection with the investigation, and he agreed to cooperate with them by recording his conversations with Eduardo Rivera-Correa, who was the mayor of one of the municipalities, and Carrasco, an attorney retained by each of the three municipalities to provide legal representation.[1]

Thereafter, on July 8, 2014, Carrasco was indicted in the United States District Court for the District of Puerto Rico on four counts of violating 18 U.S.C. § 666(a)(1)(B).[2]  Section 666(a)(1)(B) provides in relevant part:

---

[1] The criminal complaint against Mercado was dismissed without prejudice in December 2012 pending Mercado's completion of an eighteen-month pretrial diversion program.

[2] The same indictment also charged Rivera-Correa with various offenses related to the alleged scheme.

> [w]hoever . . . being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof . . . corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more . . . shall be fined under this title, imprisoned not more than 10 years, or both.[3]

Each count alleges that, in violation of § 666, Carrasco took payments from Mercado in connection with the award of contracts to Mercado's environmental consulting firm by one of the three Puerto Rican municipalities that had retained Carrasco. The first count alleges that Carrasco received payments from July 2009 through August 2009 in connection with contracts awarded by the municipality of Barceloneta. The second count alleges that he received payments from March 2010 to July 2010 in connection with contracts awarded by the municipality of Rio Grande. The third count alleges that he received payments from August 2010 through October 2010 in connection with contracts awarded by the

---

[3] The provisions of 18 U.S.C. § 666(a) apply only "if the circumstance described in subsection (b) of [18 U.S.C. § 666] exists." Subsection (b) provides that "[t]he circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." Carrasco accepts that each of the three municipalities met this condition in the relevant years.

municipality of Juncos. The fourth count alleges that he received payments in July 2011 in connection with contracts awarded by, once again, Barceloneta.

Carrasco was tried on the charges before a jury in December 2019 and was found guilty on all four counts. A judgment of conviction was entered, and the District Court sentenced him on April 27, 2021, to 120 months of imprisonment and 3 years of supervised release. Carrasco then timely filed this appeal.

## II.

Carrasco first seeks the reversal of his convictions on the ground that they are not supported by sufficient evidence. To succeed, he must show that the evidence in the record does not suffice to permit a rational juror to find him guilty beyond a reasonable doubt of violating § 666. See United States v. Levin, 13 F.4th 96, 99-100 (1st Cir. 2021). Our review is de novo, but we "review[] the evidence, and mak[e] all inferences and credibility choices, in the government's favor." United States v. Rodríguez-Torres, 939 F.3d 16, 23 (1st Cir. 2019).

## A.

Carrasco directs our attention initially to what the record shows with respect to the element of the offense --- set forth in § 666(a)(1) -- that requires the government to prove beyond a reasonable doubt that he was an "agent of a[] . . . local . . . government." Section 666(d)(1) defines an "agent" of a local

- 4 -

government to be "a person authorized to act on behalf of" it and specifies that the definition of the term "includes a servant or employee, and a partner, director, officer, manager, and representative."

To prove that Carrasco was such an "agent," the government submitted into evidence his contracts with Barceloneta, Rio Grande, and Juncos. Carrasco does not dispute that the text of each of the contracts authorized him to provide legal representation to the named municipality "in the Courts of Puerto Rico" and "the administrative and investigative agencies." Therefore, it would appear that the evidence does suffice to support the "agent" element of the offense, as each of the contracts would appear to show that he was "authorized to act on behalf of" the relevant municipality and so that he was an "agent" of that municipality. See Representative, Black's Law Dictionary (11th ed. 2019) (defining "representative" as "[s]omeone who stands for or acts on behalf of another").[4]

Carrasco nonetheless contends that the evidence does not suffice to satisfy the "agent" element because no evidence in the

---

[4] Carrasco does point to our prior statement that "there is no more classic government 'representative' than a legislative branch officer," United States v. Fernandez, 722 F.3d 1, 8 (1st Cir. 2013), to argue that he cannot be an "agent" of the municipalities solely because the contracts make him a "representative" of the municipalities. But, our conclusion that Carrasco is an "agent" for purposes of § 666(d)(1) relies on the

- 5 -

record suffices to show that he took any specific action under any of the contracts on behalf of any of the municipalities. But the text of § 666(d)(1) does not support a construction of the statute that would require the government to make that showing to satisfy the "agent" element.

By its plain terms, the text of the statute defines an "agent" to be merely "a person <u>authorized to</u> act on behalf of . . . a government." 18 U.S.C. § 666(d)(1) (emphasis added). It does not define an "agent" to be only a person who "<u>acts</u>" on behalf of a government.

Nor is there any reason to conclude from the text of related provisions that the words "authorized to act" in § 666(d)(1) mean "acts," such that it is not enough to prove that the person has been merely authorized to act. After all, a separate provision of § 666(d)(1) states that a "person" qualifies as an "agent" if that person is a "representative." <u>Id.</u> Thus, that provision does not state that a "person" so qualifies even if they have only been "authorized to be a . . . representative."

Reinforcing the conclusion that the words "authorized to act" mean what they say is the fact that the Supreme Court of the United States has explained in construing other parts of § 666

term "represent" as used in the contracts, not on the term "representative" as used in § 666(d)(1). We thus need not address Carrasco's contention that <u>Fernandez</u> would preclude us from relying on that term.

that the statute's "expansive" and "unqualified language," Salinas v. United States, 522 U.S. 52, 56 (1997), "reveals Congress' expansive, unambiguous intent to ensure the integrity of organizations participating in federal assistance programs," Fischer v. United States, 529 U.S. 667, 678 (2000).  In addition, both our Circuit and the Supreme Court have "repeatedly rejected constructions of § 666 that would impose limits beyond those set out in the plain meaning of the statute."[5]  United States v. Fernandez, 722 F.3d 1, 10 (1st Cir. 2013); see also Fischer, 529 U.S. at 678.

Carrasco contends that a prior precedent of ours, United States v. Sotomayor-Vázquez, 249 F.3d 1 (1st Cir. 2001), as well as two precedents from other circuits, United States v. Lupton, 620 F.3d 790, 800-01 (7th Cir. 2010); United States v. Hudson, 491 F.3d 590, 594-95 (6th Cir. 2007), support his position.  We disagree.

Sotomayor-Vázquez did hold that evidence in the record in that case showed that the defendant was an "agent" of the non-profit entity at issue because, although the defendant was formally an independent contractor, the defendant "acted as [the]

_____

[5] Carrasco's contention that the government was required to show a nexus between the matters on which Carrasco was authorized to act on behalf of the municipalities and the contracts that he was alleged to have helped Mercado obtain fails for the same reason: Carrasco does not identify, nor can we discern, any textual basis for such a limitation on the reach of § 666(d)(1).

executive director" of the entity by approving all its organizational decisions, meeting with city officials on the agency's behalf, and making decisions regarding hiring and firing. 249 F.3d at 8-9. But we made clear in so holding that the definition of "agent" under § 666(d)(1) has two "aspect[s]": one relating to a person's having been "authorized to act on behalf of" the covered entity and the other relating to whether the person was an "employee, partner, director, officer, manager, or representative" of that entity. Id. at 8. We also made clear that we based our holding only on that second "aspect of the statutory definition." Id. Thus, our decision there in no way indicates either that an "agent" is not merely a person who was "authorized to act on behalf of" the relevant entity or that evidence that suffices to show only that the defendant was so authorized cannot suffice to show that the person qualifies as an "agent."

Lupton also is no help to Carrasco. The evidence there was deemed sufficient to render the defendant an "agent" based on the activities of the defendant vis-à-vis a state agency. 620 F.3d at 800-01. But the contract between the real estate firm that employed the defendant in that case and the state of Wisconsin expressly provided that the firm was acting as "an independent contractor and not as an officer, employee, or agent of the state." Id. at 800. Thus, while the court in Lupton looked beyond the

terms of the contract to determine that the defendant was an "agent" for purposes of § 666, the court did not thereby suggest that contracts like those at issue in Carrasco's case are inadequate on their own to supportably show that a defendant is an "agent" of a local government.

Finally, in Hudson, the Sixth Circuit determined that the evidence sufficed to satisfy the "agent" element based on both contract terms that "gave [the defendant] broad authority to set up a television station in the high school" and testimony that the defendant exercised that authority. 491 F.3d at 594-95. But, once again, nothing in that case suggests that a contract's terms, standing alone, are insufficient to support a jury's finding that a defendant was an "agent" in the relevant sense when those terms authorize the defendant to act on behalf of the relevant entity.

Carrasco does also argue that he is similarly situated to the defendant in United States v. Pinson, 860 F.3d 152 (4th Cir. 2017). There, the defendant was convicted of aiding and abetting -- in violation of § 666 -- theft carried out by an employee of a company that had been hired by a county in South Carolina. Id. The Fourth Circuit concluded that the employee was not an "agent" under § 666(d)(1) because of the limited nature of the tasks that he performed for his employer. Id. at 165-66. As the court explained, the employee "had no actual or implied authority to act on [the county's] behalf in any capacity." Id.

- 9 -

at 166. Rather, because the employee's only relevant duty was "receiving and packaging invoices from the company's contractors and submitting them to [the county] for payment," the employee "acted solely on behalf of the" corporate entity, not the county. Id. at 165.

Carrasco contends that, for all the record shows in his case, he could have been tasked with carrying out only the same sort of limited tasks that were determined to be insufficient in Pinson to permit the employee there to be deemed an agent under § 666. Carrasco thus contends that the contracts alone cannot suffice to permit a factfinder to find that he was an "agent" under § 666.

But, while the Fourth Circuit's conclusion in Pinson hinged on the evidence presented to show the employee's relationship with the county, there is no suggestion in Pinson that any evidence was presented to show that, notwithstanding the employee's actual duties, the employee was formally authorized to act on the county's behalf. In Carrasco's case, by contrast, a rational jury could conclude based on the contracts between him and the municipalities that he was authorized to act on behalf of those municipalities, given the express authorization in each contract for him to "represent" the relevant municipality. We thus do not see how Pinson supports Carrasco's position any more than the other readily distinguishable precedents on which he

relies and so reject his sufficiency challenge insofar as it takes aim at the record support for the "agent" element of the offense that underlies his convictions.

**B.**

Carrasco's other ground for challenging his § 666 convictions on sufficiency grounds is that the government failed to supportably show that he engaged in any "official act." Here, he contends that the government was required to prove that he received funds in exchange for taking "an official act" to prove that he violated § 666. He then goes on to contend that we must apply the definition of "official act" that the Supreme Court set forth in construing the "official act" element of 18 U.S.C. § 201(a)(3) in McDonnell v. United States, 579 U.S. 550 (2016), and that there is no evidence in the record that could suffice to show that he received the funds from Mercado in exchange for taking such an "official act."

The Court explained in McDonnell that an "official act" occurs when a "public official . . . make[s]" (or agrees to make) "a decision or take[s]" (or agrees to take) "an action on [a] 'question, matter, cause, suit, proceeding, or controversy.'" 579 U.S. at 574 (quoting 18 U.S.C. § 201(a)(3)). The Court further explained that § 201(a)(3) required that the "question, matter, cause, suit, proceeding or controversy," § 201(a)(3), must be one which is, or which may at a future time be, "pending" before the

- 11 -

official. 579 U.S. at 570 (quoting 18 U.S.C. § 201(a)(3)). The Court also explained that an "official act" occurs for purposes of § 201 when a public official "us[es] his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official." Id. at 574.

The necessary premise of this ground of Carrasco's sufficiency challenge is that § 666 has an "official act" element. But the text of § 666, unlike the text of § 201 that the Supreme Court construed in McDonnell, does not include the phrase "official act." And, as the government points out, several circuits have held that the government need not show that a defendant engaged in an "official act" to secure a conviction under § 666. See United States v. Lindberg, 39 F.4th 151, 165-169 (4th Cir. 2022); United States v. Roberson, 998 F.3d 1237, 1246-47 (11th Cir. 2021); United States v. Ng Lap Seng, 934 F.3d 110, 131-34 (2d Cir. 2019); United States v. Porter, 886 F.3d 562, 565-66 (6th Cir. 2018).

Moreover, although our Circuit has proceeded in some cases on the understanding that § 666 does contain an "official act" element, we have done so only in cases in which the government did not dispute the point and in which the jury had been instructed that the offense does contain an "official act" element, see, e.g.,

United States v. Martínez, 994 F.3d 1, 6-7 (1st Cir. 2021). We thus have not held that § 666 does have an "official act" element.

Against this precedential backdrop, it is potentially significant both that the District Court did not instruct the jury in Carrasco's case that § 666 has an "official act" element[6] and that in this case the government contests whether § 666 has such an element. But we need not decide whether § 666 has the element in question because Carrasco has failed to show that the government did not present sufficient evidence for a rational juror to conclude that element was met.

The record supportably shows that Carrasco agreed to "advise" the mayors of the relevant municipalities "knowing or intending that such advice w[ould] form the basis for an 'official act'" by those municipal officials -- namely, the awarding of contracts by those municipalities to a company associated with Mercado. McDonnell, 579 U.S. at 574. That evidence takes the form chiefly of testimony from Mercado himself.

Mercado testified that his environmental consulting firm had contracts with the municipalities of Barceloneta, Juncos, and Rio Grande. He further testified that the contracts were not

---

[6] Carrasco's briefing does at points assert that "[t]he jury should . . . have been instructed in conjunction with McDonnell's two-part test" and thus instructed to identify an official act taken by Carrasco, but Carrasco's counsel clarified during oral argument that no challenge was being made on appeal to the jury instructions given by the District Court.

- 13 -

awarded pursuant to a bidding process but instead after a negotiation with the municipal government. He then testified that he made payments to Carrasco in exchange for Carrasco providing "[a]ccess, protection, watch my back," while explaining that the basis for his belief in Carrasco's ability to deliver the agreed-upon "[a]ccess," "protection," and back-watching was Mercado's belief that Carrasco had "[t]otal access" and held "[t]otal influence" over the mayors in the three municipalities. Mercado further testified that he understood Carrasco would, in exchange for the payments, ensure that Mercado would receive municipal contracts. And, finally, Mercado testified that he understood Carrasco to be soliciting these payments by asking for "loose change" in connection with Mercado's receipt of municipal contracts.

In addition, the record shows both that the government submitted into evidence certain checks that Mercado made out to Carrasco and that Mercado testified that those checks were paid in connection with the specific contracts identified in the indictment. So, there is evidence that at least partly corroborates Mercado's testimony.

Notwithstanding this collection of evidence, Carrasco contends that the evidence in the record does not suffice to satisfy the "official act" element. He does so by focusing on Mercado's description of Carrasco's alleged provision of

- 14 -

"[a]ccess, protection," and watching Mercado's back.  Carrasco argues that these services are too "speculative and nebulously-described" to meet the McDonnell standard for what constitutes an "official act."  Carrasco then contends that the payments Mercado made to him were not bribes but rather were akin to the speculative gift-giving at issue in United States v. Sun-Diamond Growers of California, 526 U.S. 398 (1999), which the Supreme Court concluded was not in exchange for an "official act."

But Mercado's testimony, as we have explained, provides a basis for finding more than that Carrasco had provided Mercado with merely "access" or "protection."  It also suffices to permit a finding that Carrasco "advise[d]" the mayors "knowing or intending that [his] advice w[ould] form the basis for an 'official act'" taken by the mayors -- namely, the award of the contracts to Mercado.  McDonnell, 579 U.S. at 574.  And because Carrasco makes no argument as to why such advice would not for that reason qualify as an "official act," we reject his contention that the evidence does not suffice under McDonnell to allow a rational jury to conclude that he had undertaken such an act.

## III.

We still must consider Carrasco's two evidentiary challenges, each of which was preserved below, and each of which

he contends supports our vacating his convictions.  We reject these challenges as well.

## A.

Carrasco first argues that the District Court erred in admitting evidence of municipal contracts and related payments made by Mercado to Carrasco that went beyond the specific contracts and related payments that ground the specific § 666 charges for which Carrasco was indicted.  The relevant facts are as follows.

Carrasco's indictment charged him with receiving approximately $72,300 in payments from Mercado related to seven municipal contracts.  The evidence of these payments at trial took the form of checks that were made out from Mercado to Carrasco. The memo field on each check stated that the check was paid for "legal services" or some other seemingly legitimate service that Carrasco had provided or was to provide to Mercado.  But the government did not submit into evidence only checks from Mercado to Carrasco that the government contended were payments to Carrasco in return for influencing the award of the contracts that form the predicate for the § 666 charges against Carrasco.  The government also submitted into evidence additional checks that Mercado testified were kickbacks from Mercado to Carrasco in exchange for

Carrasco agreeing to steer to Mercado contracts beyond the contracts mentioned in the indictment.[7]

Carrasco contends that the District Court erred in admitting into evidence these additional checks as well as Mercado's related testimony. In his view, that evidence constituted propensity evidence of the type prohibited by Federal Rule of Evidence 404(b).

To make out this contention, Carrasco first argues that the evidence was not admissible under Rule 404(b) as evidence "intrinsic" to the conduct for which Carrasco was indicted. He contends that is so because this evidence was relevant only to other, uncharged conduct -- that is, the evidence was "extrinsic to the crime charged." United States v. Gonyer, 761 F.3d 157, 162 (1st Cir. 2014) (quoting United States v. Roszkowski, 700 F.3d 50, 56 (1st Cir. 2012)).

The government responds that even if the evidence regarding the additional checks is "extrinsic," it is admissible because it has a "special relevance" under Rule 404(b). United

---

[7] In total, the government submitted into evidence forty-one checks representing approximately $195,000 in payments from Mercado to Carrasco. Mercado testified that three of those checks, totaling $2,989, were for legitimate legal services. It appears that Mercado was not asked to testify as to whether four of the checks, totaling $5,850, were payments for legitimate services provided by Carrasco or payments related to the steering of contracts to Mercado. Mercado testified that the remaining thirty-four checks were payments made in exchange for Carrasco agreeing to steer contracts to Mercado.

States v. Henry, 848 F.3d 1, 8 (1st Cir. 2017) (citing United States v. Hicks, 575 F.3d 130, 142 (1st Cir. 2009)). In particular, the government argues that the evidence is specially relevant because it shows not only Carrasco's intent in accepting the payments for which he was charged but also his modus operandi for receiving payments in connection with his agreement with Mercado to influence the mayors to steer contracts to Mercado's firm in exchange for his receiving payments from Mercado. See id. (quoting Fed. R. Evid. 404(b)(2)) (noting that "special relevance under Rule 404(b)" includes "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). And, notably, Carrasco does not dispute that the evidence was of this specially relevant sort.

Thus, in the end, Carrasco's challenge boils down to his contention that this evidence was not admissible because the evidence was unduly prejudicial and thus violative of Rule 403. See id. ("If prior crime evidence has special relevance under Rule 404(b), the court must move on to consider whether the evidence should nevertheless be excluded under Rule 403."). But, as the party opposing the admission of evidence on Rule 403 grounds, Carrasco bears the burden of establishing "that the probative value" of the evidence at issue "is substantially outweighed by the danger of unfair prejudice." United States v. Tse, 375 F.3d 148, 162 (1st Cir. 2004). And, given that "we afford deference to

a [district court]'s balancing decision, and '[o]nly rarely -- and in extraordinarily compelling circumstances -- will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect,'" United States v. Doe, 741 F.3d 217, 229 (1st Cir. 2013) (alteration in original) (internal quotation omitted) (quoting United States v. Li, 206 F.3d 78, 84-85 (1st Cir. 2000)), we conclude that Carrasco has not carried that burden here.

Carrasco's only argument as to why the admission of the challenged evidence was unduly prejudicial is that "[f]looding the jury" with that evidence "about uncharged conduct practically guaranteed that the jury would be unduly influenced" and thus unable to disentangle the acceptable non-propensity inference from the forbidden propensity inference. And Carrasco relies for this argument solely on United States v. Gilbert, 229 F.3d 15, 21-25 (1st Cir. 2000).

But, in Gilbert, we affirmed, in an interlocutory appeal brought by the government, a district court's decision to exclude evidence, id. at 20. Here, by contrast, we are reviewing a defendant's challenge to a district court's decision to admit evidence.

Moreover, in affirming the district court's decision not to admit the evidence in Gilbert, we concluded that the

non-propensity purpose of admitting the evidence was of only marginal relevance to the government's case. Id. at 24. By contrast, Carrasco's intent in accepting checks with innocuous explanations in their memo lines -- namely, whether he believed those checks to be payments for legitimate services or for steering contracts to Mercado -- was a central issue at trial.

To be sure, we have acknowledged that evidence admissible for a special purpose under Rule 404(b) may be unfairly prejudicial when other evidence that carries less risk of being unduly prejudicial could have been used to prove the fact in question. See United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000). But in Varoudakis, we noted that the record was replete with compelling, alternative evidence already before the jury that spoke to the same issue, thereby lessening any probative value of the proffered "other acts" evidence. Here, by contrast, the evidence of the additional checks and Mercado's related testimony were central to establishing Carrasco's intent. And, although Carrasco claims that the admission of the other checks and accompanying testimony risked "[f]looding the jury" with evidence of uncharged bad acts and thus that the jury would make an improper propensity inference,[8] it is unclear how many of the

---

[8] To the extent Carrasco challenges the illustrative charts the government used to summarize the evidence of payments, both charged and uncharged, that Mercado made to Carrasco, he has failed

checks might have been admitted without creating that risk. Moreover, we have in similar circumstances found no error in the admission of repetitive evidence of prior bad acts with special relevance when "the repetition of the conduct was itself distinctly probative." United States v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989); see id. at 155-56 (affirming, in a case where defendant was charged with twenty counts of embezzlement for misappropriating twenty weekly expense allowances, the admission under Rule 404(b) of thirty-one checks the government argued represented thirty-one identical but uncharged misappropriations of weekly allowances). We thus conclude that the District Court did not abuse its discretion in admitting evidence of Mercado's illicit but uncharged payments to Carrasco.[9]

---

to develop the argument and thus has waived it. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[9] Carrasco contends that the District Court erred in failing to give the jury a limiting instruction concerning the purpose for which the jury could consider the evidence of the prior payments he had accepted from Mercado. But Carrasco "may not complain about the absence of a limiting instruction because he never requested one." United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008) (citing Huddleston v. United States, 485 U.S. 681, 691–92 (1988)) (explaining that Huddleston "not[ed] that Federal Rule of Evidence 105 provides protection from unfair prejudice by requiring the trial court, upon request, to instruct the jury that the evidence of other acts is to be considered only for the proper purpose for which it was admitted"). The District Court therefore "did not err by failing to issue, sua sponte, the limiting instruction that [Carrasco] now claims was essential." Id. (citing United States v. Cartagena–Carrasquillo, 70 F.3d 706, 713 (1st Cir. 1995)) (explaining that Cartagena–Carrasquillo "refus[ed] to impose obligation on court to give, sua sponte, a limiting

**B.**

Carrasco's second evidentiary challenge concerns portions of Mercado's testimony in which Mercado characterized the content of certain interactions he recounted and certain recorded conversations that were played for the jury. Carrasco contends that Mercado's characterizations of these conversations contravened Federal Rule of Evidence 701 and so were improperly admitted into evidence. We need not decide whether that is so, however, because we agree with the government that any error on this score was harmless.

The admission of improper testimony is harmless if it is "highly probable that the error did not influence the verdict." United States v. Flores-De-Jesus, 569 F.3d 8, 27 (1st Cir. 2009) (quoting United States v. Casas, 356 F.3d 104, 121 (1st Cir. 2004)). The government bears the burden of making that showing. See id. (quoting United States v. Rodriguez-Marrero, 390 F.3d 1, 18 (1st Cir. 2004)). To determine whether the government has made that showing, we must engage in "a panoramic, case-specific inquiry" that considers multiple factors, including "the centrality of the tainted material," its "prejudicial impact," and "the relative strengths of the parties' cases." Id. (quoting

---

instruction because that decision is 'within the ken of counsel and part of litigation strategy and judgment'").

United States v. Sepúlveda, 15 F.3d 1161, 1182 (1st Cir. 1993)).

We conclude that the government has made the necessary showing.

As the government points out, the testimony by Mercado that is at issue formed only one part of Mercado's testimony, and that testimony was itself only part of the government's case. Specifically, in testifying, Mercado did more than address his understanding of the meaning of words that appeared in the transcripts of his conversations with Carrasco. He also testified, without objection from Carrasco, about the yearslong corrupt relationship between the two of them, with specific reference to the bribes and contracts charged in the indictment.

The evidence also included the many checks that Mercado paid to Carrasco and Mercado's testimony about those checks. Mercado testified in that respect that he made payments to Carrasco for "[a]ccess" and "protection" due to his belief that Carrasco had "[t]otal access" and "[t]otal influence" over the mayors in the three municipalities at issue and that Mercado understood by making those payments that Carrasco would ensure that Mercado received municipal contracts.

Finally, as the government notes, the transcripts of the recorded conversations were themselves in evidence. And the transcripts on their face are plainly incriminating even setting aside Mercado's testimony about the meaning of what was said in them. For example, the transcript of one of the recorded

conversations shows that Mercado mentioned explicitly to Carrasco that investigators would be asking Mercado questions regarding whether Mercado received "kickbacks" for "contracts" and that Mercado could not "lie" about it. That transcript also shows that Mercado then stated repeatedly, speaking only to Carrasco, that he did not "have a way to justify that money" and that "out of the checks we had, there were many . . . very close to . . . your clients' contracts without any justification." Soon after, according to the transcript, Carrasco stated: "If you at least get me the information on the date and amount I could find out what sort of things happened during, during those dates, because we may have some sort of explanation. It's the only thing . . . if not . . . we're screwed." (Emphasis added).

The government argues based on this evidence that the recorded conversations themselves, in combination with the other evidence, are enough to establish Carrasco's guilt even without Mercado's commentary interpreting them. Yet Carrasco offers no explanation for why the plain meaning of these comments does not reflect a corrupt relationship between Mercado and Carrasco. He thus offers no explanation for why the admission of Mercado's interpretations of those conversations would not have been harmless. And without any such explanation from Carrasco, we must conclude that the record in this case "offers every assurance that

the [challenged testimony] did not affect the trial's outcome" and so was "harmless." Sepúlveda, 15 F.3d at 1182.

## IV.

Carrasco separately challenges his 120-month prison sentence as procedurally and substantively unreasonable. He does so by advancing three preserved challenges to the District Court's application of the Guidelines, as well as claims regarding the disparity between his sentence and both the sentences imposed for similar offenses nationwide and the sentence received by Mercado.

## A.

We begin with Carrasco's claims that his sentence is procedurally unreasonable. We review the District Court's factual determinations for clear error, its legal interpretation and application of the sentencing guidelines de novo, and its judgement calls for abuse of discretion. United States v. Ouellette, 985 F.3d 107, 110 (1st Cir. 2021).

## 1.

Carrasco first challenges the District Court's application of the two-level enhancement that U.S.S.G. § 3C1.1 sets forth if:

> the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and [if] the obstructive conduct related to . . . the defendant's offense of conviction and any

- 25 -

> relevant conduct; or . . . a closely related offense.

The District Court determined that the enhancement applied to Carrasco because Carrasco "attempt[ed] to convince . . . Mercado . . . that the best strategy to face their problem was for them to keep silent and not tell anything to anyone, to invoke the attorney-client privilege to cover their scheme, or to lie to the Federal Bureau of Investigation."  The District Court based the predicate determination on, among other things, a conversation that Mercado recorded between himself and Carrasco at the behest of law enforcement.[10]

To the extent that Carrasco contends that the District Court clearly erred in determining that Carrasco had attempted to

---

[10] That conversation went as follows:

| Mercado: | And what about when they ask you, why was he your client? |
| Carrasco: | I cannot give out any details. |
| Mercado: | You know, they are going to ask that to me.  And I am going to tell them, "Yes, he was my attorney."  "What for?" |
| Carrasco: | For everything. |
| Mercado: | For this. . . Well, that would be lying to them. |
| Carrasco: | For everything, you understand. |
| Mercado: | You would say for everything? |
| Carrasco: | Yes, for everything. |

convince Mercado that Mercado should invoke attorney-client privilege, we cannot agree. The District Court's reading of the transcript is certainly a plausible one. See United States v. Rivera, 51 F.4th 47, 53 (1st Cir. 2022) ("[W]here there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." (quoting United States v. Ilarraza, 963 F.3d 1, 14 (1st Cir. 2020))).

Carrasco separately contends that, even if he engaged in the conduct described above, the District Court erred by applying the enhancement to him. He notes that Application Note 5 to § 3C1.1 lays out "a non-exhaustive list" of certain conduct which "ordinarily do[es] not warrant application" of the enhancement. He goes on to point out that Section B of that Note explains that one type of conduct which "ordinarily" is insufficient to trigger the enhancement is "making false statements, not under oath, to

---

| Mercado: | But, but I will earn myself eight years. |
| Carrasco: | No, no, wait a minute, I am not telling you to— |
| Mercado: | [Crosstalk] I mean, I don't have . . . What evidence do I have? |
| Carrasco: | Listen to me. I am telling you about me, what I would say, "For everything." |

law enforcement officers, unless Application Note 4(G) above applies." And, finally, he emphasizes that Application Note 4 lays out "a non-exhaustive list of examples of the types of conduct" that justifies application of the enhancement, including Section G, which provides that the enhancement applies if the defendant "provid[ed] a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." See U.S.S.G. § 3C1.1 n.4 & n.5. Carrasco then pulls the argument together by contending that his conduct is properly categorized as an unsworn false statement to law enforcement under Application Note 5(B) rather than as a "materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution" under Application Note 4(G).[11]

In support of this contention, Carrasco argues that his suggestion that Mercado lie to law enforcement could not have

---

[11] To the extent Carrasco argues that the enhancement does not apply to him at all because he made the statements in question to Mercado and Mercado was not a member of law enforcement, Carrasco misapprehends the reach of the enhancement. Under Application Note 9, Carrasco would be accountable both for his "own conduct and for conduct that [he] aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 3C1.1 n.9. Because Carrasco advised Mercado to make a false claim of attorney-client privilege to law enforcement, the fact that Mercado rather than Carrasco would have actually lied to law enforcement would be no defense to the application of the enhancement to Carrasco.

created the necessary significant obstruction or impediment under Note 4(G), given that Mercado was already cooperating with law enforcement. He further notes that, even if Mercado had not been cooperating with law enforcement at the time, Application Note 4(G) applies only if the obstructive conduct "significantly obstructed or impeded" an investigation or prosecution. For that reason, Carrasco contends that the enhancement could not apply to him because the District Court made no finding that his suggestion to Mercado would have had such an impact if Mercado had not already been cooperating with law enforcement and had instead, at Carrasco's suggestion, claimed a nonexistent lawyer-client confidentiality.

Carrasco ignores, however, the import of Application Note 4(A), which makes the enhancement applicable when a defendant "threaten[s], intimidat[es], or otherwise unlawfully influenc[es] a . . . witness . . . directly or indirectly, or attempt[s] to do so." U.S.S.G. § 3C1.1 n.4(A) (emphasis added). While Carrasco contends that he did not attempt to "threaten[]" or "intimidat[e]" Mercado, we have previously explained that simply asking a potential witness to lie to law enforcement "plainly constitutes an attempt to 'unlawfully influenc[e] a . . . witness.'" United States v. Coffin, 946 F.3d 1, 8 (1st Cir. 2019); see also United States v. Batchu, 724 F.3d 1, 12 (1st Cir. 2013); cf. United States v. O'Brien, 870 F.3d 11, 18 (1st Cir. 2017). Because Carrasco

does not explain why our reasoning in such cases is not applicable here, we reject his challenge to the application of the obstruction of justice enhancement to him.

**2.**

Carrasco next contends that the District Court erred in applying a two-level enhancement based on § 2C1.1(a)(1) of the Guidelines. He does so on the ground that the District Court was wrong to treat him as a "public official" within the meaning of that Guideline.

In applying the enhancement, the District Court relied on the first Application Note to § 2C1.1. The District Court noted that the Application Note provides that the term "'public official' shall be construed broadly." U.S.S.G. § 2C1.1 n.1. It also noted that Section C of that Application Note provides that the term "public official" includes:

> [a]n officer or employee or person acting for or on behalf of a state or local government, or any department, agency, or branch of government thereof, in any official function, under or by authority of such department,

agency, or branch of government, or a juror in a state or local trial.

Id. § 2C1.1 n.1(C).

The District Court also noted that Section E of that Application Note provides in relevant part that a "public official" includes:

> [a]n individual who . . . (i) is in a position of public trust with official responsibility for carrying out a government program or policy; (ii) acts under color of law or official right; or (iii) participates so substantially in government operations as to possess de facto authority to make governmental decisions (e.g., which may include a leader of a state or local political party who acts in the manner described in this subdivision).

Id. § 2C1.1 n.1(E).

In contending that the District Court was wrong to apply the enhancement, Carrasco argues that the record indisputably shows that he was never appointed or elected to any office, that he was not employed by the municipalities for whom he performed contract services, and that "his contractual relationship was not shown to afford him decision-making authority or any other indicia of public trust." He thus contends that there was no basis for applying the enhancement set forth in the Guideline to him.

But the District Court explained that its determination that Carrasco was a "public official" was based on "the duties that [he] assumed and performed under his contracts with the

[m]unicipalities of Barceloneta, Rio Grande, and Juncos" and that, in the District Court's view, Carrasco "was in a position of public trust that infused him with enough de facto authority to act for or on behalf of those municipalities and influence the decision-making process, particularly as it relate[d] to ensuring that the municipalities awarded contracts to . . . Mercado." Moreover, shortly before denying Carrasco's objection to the application of the sentence enhancement to him, the District Court had denied Carrasco's objection to the presentence report's description of Carrasco as "the main advisor/attorney for the mayors of Barceloneta, Rio Grande, and Juncos" and, in doing so, had pointed to Mercado's testimony that Carrasco had close relationships with all three mayors and had "total influence" over each of them.

We thus conclude that the District Court determined, albeit implicitly, that Mercado's testimony detailing Carrasco's relationships with the mayors supported a finding that, by a preponderance of the evidence, Carrasco "participate[d] so substantially in government operations as to possess de facto authority to make governmental decisions."  U.S.S.G. § 2C1.1 n.1(E)(iii).  Carrasco's only argument for why the District Court would have been wrong to so conclude, however, is that Carrasco was, at most, only an "advisor" to the mayors.  Yet this argument fails to grapple with Mercado's testimony that Carrasco had "total

influence" over the mayors, as it is difficult to see how Carrasco could be understood to have "total influence" over the mayors if he did not have "de facto authority to make . . . decisions" regarding to whom the contracts would be awarded.  We thus see no error in the District Court's application of this enhancement to Carrasco.

**3.**

Carrasco's final Guidelines-related contention is that the District Court erred by applying a four-level enhancement to him under § 2C1.1(b)(3).  That guideline provides that the enhancement applies when the "offense involved an elected public official or any public official in a high-level decision-making or sensitive position."  Id.  Carrasco argues that the guideline has no application to him because he "was not convicted of bribing an elected official or with joining with Mercado to do so."

Carrasco misapprehends the basis for the District Court's application of the enhancement.  The District Court did not apply the enhancement because Carrasco was found to be part of a scheme to pay the mayors in exchange for the award of contracts. It did so because it determined that Carrasco "used his influence over and his access to the mayors of the [m]unicipalities of Barceloneta, Rio Grande, and Juncos, who are elected public officials," to steer contracts to Mercado and because Carrasco

himself was a "public official" in a "high level decision-making or sensitive position."

Carrasco makes no argument that the District Court's determination on either point was incorrect. And even if we were to disregard the former determination, Carrasco makes no argument that the latter determination -- that Carrasco himself was a "public official in a high-level decision-making or sensitive position" -- would not have alone been sufficient to justify the application of the enhancement. See United States v. Hill, 645 F.3d 900, 908 (7th Cir. 2011) (affirming application of § 2C1.1(b)(3) enhancement to defendant based on finding that defendant "held a sensitive position").

Nor can we see how the determination that Carrasco was a "public official in a high-level decision-making or sensitive position" was incorrect. We explained above that the District Court was not wrong to find that Carrasco had "de facto authority to make governmental decisions" when applying an enhancement to him for being a "public official." We also conclude that the District Court was not wrong to determine on this same basis that Carrasco occupied a "high-level decision-making position," given that such a position is "characterized by a direct authority to make decisions" for the municipalities. We thus see no mistake in the District Court's application of this enhancement to Carrasco.

**B.**

Finally, we address Carrasco's challenges to the substantive reasonableness of his sentence. Our review is for abuse of discretion, United States v. Reyes-Torres, 979 F.3d 1, 9 (1st Cir. 2020), and we uphold a sentence against such a challenge so long as the district court provided "a plausible sentencing rationale" in support of "a defensible result," United States v. Contreras-Delgado, 913 F.3d 232, 243 (1st Cir. 2019) (quoting United States v. Zapata-Vázquez, 778 F.3d 21, 24 (1st Cir. 2015)).

**1.**

Carrasco's first substantive-reasonableness-based challenge is that the District Court created an unjustified disparity between his sentence and the sentences imposed on similarly situated defendants nationally. This disparity argument rests on the contention that the District Court erred in declining to credit statistics showing that the average sentence in the United States for a bribery-related offense was twenty-five months in 2019. Carrasco, relying on these statistics, contends that the District Court should have sentenced him to a comparable period of incarceration.

But a claim of national disparity relies on "apples . . . being compared to apples," United States v. Joubert, 778 F.3d 247, 256 (1st Cir 2015). And, as the District Court correctly noted, various statistical measures of the average sentences imposed upon

defendants convicted of bribery offenses include sentences imposed upon defendants convicted under a number of federal statutes, not just defendants who, like Carrasco, were convicted for violating 18 U.S.C. § 666.  Thus, the District Court committed no error in finding that Carrasco's statistics were over-inclusive and thus provided no basis for a claim of national disparity.[12]

**2.**

Carrasco's second challenge to the substantive reasonableness of his sentence is another disparity-based challenge.  Here, he contends that the District Court erred in sentencing him to 120 months of imprisonment when Mercado was sentenced only to a pretrial diversion program.  But, as with his claim of national disparity, Carrasco must convince us that he and Mercado were similarly situated.  United States v. Gonzalez, 981 F.3d 11, 23 (1st Cir. 2020).  Yet Carrasco cannot do so given the substantial differences between Mercado and Carrasco, which

---

[12] Carrasco also challenges the procedural reasonableness of his sentence based on what he contends was an inappropriate reference by the District Court to other sentences handed down for violations of § 666 in the District of Puerto Rico.  But, the District Court made clear that it was not "purport[ing] to hold [Carrasco] responsible for all of the wrongs caused by corruption in Puerto Rico" and that the District Court was "required to impose a sentence that is commensurate" to his "offenses" and "personal characteristics" as well as the sentence's deterrent effect. Carrasco does not explain why, despite these statements by the District Court, we must understand the District Court to have impermissibly relied on community characteristics in determining his sentence.

include the fact that Mercado cooperated with law enforcement and Carrasco did not.  Cf. United States v. Mateo-Espejo, 426 F.3d 508, 514 (1st Cir. 2005) (rejecting sentencing disparity claim in light of "appellant's belated and grudging cooperation" compared to codefendant's "prompt and full cooperation").[13]

**3.**

Carrasco's final substantive-reasonableness challenge to his sentence is that the District Court erred in sentencing him to the statutory maximum.  As Carrasco himself acknowledges, the statutory maximum for the offenses of which he was convicted is one month below the lower end of the calculated Guidelines range.  Nonetheless, Carrasco objects to the District Court's refusal to vary even further downward in light of what he characterizes as "the overwhelmingly mitigating personal considerations" present in his case.

But the District Court at the sentencing hearing explicitly considered the mitigating circumstances to which Carrasco directs our attention.  Indeed, after taking note of

---

[13] To the extent Carrasco claims that the District Court imposed a penalty upon him for not pleading guilty, the claim fails for similar reasons: Carrasco cannot show that any similarly situated codefendant received a lesser sentence simply because he went to trial rather than pleading guilty, particularly given that, in handing down Carrasco's sentence, the District Court noted that the mayor of Barceloneta received the same sentence "even though he pled guilty and less money was involved" in the crimes to which to mayor pled guilty than the crimes of which Carrasco was found guilty.

Carrasco's age, family, and multiple medical conditions, the District Court also noted that Carrasco had worked as an attorney "for more than 30 years" and that Carrasco had submitted "many letters of recommendation" that spoke to his "good moral character and values" and that "describe[d] him as an exemplary son, father, and friend, and as an honorable citizen and consummate professional . . . who still has much to offer." The District Court then noted, however, that none of those letters mentioned Carrasco's corruption convictions and that "it would not be honest or show integrity" for an attorney to "do what [Carrasco] was convicted of doing in this case over five years," such as "accept[ing] bribes, cover[ing] up a scheme involving paying bribes, or telling someone to lie concerning the bribe scheme." The District Court therefore concluded that the 120-month guideline sentence was "the appropriate punishment pursuant to the facts of this case and in accordance with the [§] 3553(a) factors." We cannot conclude that the District Court's conclusion on this score was predicated on implausible reasoning or yielded an indefensible result. We thus reject Carrasco's challenge.

**V.**

For the above reasons, we **<u>affirm</u>** Carrasco's convictions and his sentence.